1  LOUIS A. LEONE, ESQ. (SBN: 099874)
2  KATHLEEN L. DARMAGNAC, ESQ. (SBN: 150843)
   KATHERINE A. ALBERTS, ESQ. (SBN: 212825)
3  **STUBBS & LEONE**
   A Professional Corporation
4  2175 N. California Blvd., Suite 900
   Walnut Creek, CA  94596
5  Telephone:    (925) 974-8600
6  Facsimile:    (925) 974-8601
   leonel@stubbsleone.com
7  darmagnack@stubbsleone.com
   albertsk@stubbsleone.com
8

9  Attorneys for Defendants
   BILBIR DHILLON, MARIA FUENTES,
10 AUTUMN GUTIERREZ, RICHARD HOBBS,
   RONALD J. LIND, RANDY OKAMURA,
11 RICHARD K. TANAKA, ROSA G. PEREZ,
   ANITA L. MORRIS, MICHAEL L. BURKE,
12 AND LEANDRA MARTIN
13

14              UNITED STATES DISTRICT COURT

15      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

16 | JUNE SHELDON,                              | Case No.:  C08 03438 RMW
   |              Plaintiff,                    |
17 |                                            |
   |       vs.                                  | **DEFENDANTS' NOTICE OF MOTION
18 |                                            | AND MOTION TO DISMISS;**
   | BILBIR DHILLON, MARIA FUENTES,             | **MEMORANDUM OF POINTS &
19 | AUTUMN GUTIERREZ, RICHARD                  | AUTHORITIES; [PROPOSED]**
   | HOBBS, RONALD J. LIND, RANDY               | **ORDER** (Fed.R.Civ.Pro. 12(b)(6))
20 | OKAMURA AND RICHARD K. TANAKA,             |
   | and in their individual and official capacities; |
21 | ROSA G. PEREZ, in her individual and       | **Date:        November 21, 2008**
   | official capacities; ANITA L. MORRIS, in   | **Time:        9:00 a.m.**
22 | her individual and official capacities;    | **Courtroom:  6, 4th Floor**
   | MICHAEL L. BURKE, in his individual and    |
23 | official capacities; LEANDRA MARTIN, in    |
   | her individual and official capacities;    |
24 |                                            |
25 |              Defendants.                   |

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................3

    A.     FACTUAL BACKGROUND ......................................................................3

    B.     PROCEDURAL BACKGROUND................................................................5

III.   ARGUMENT ........................................................................................................6

    A.  Plaintiff Was Not Engaged In Protected Speech And Therefore Cannot State A Claim For Retaliation in Violation Of her First Amendment Rights .......................................7

        1.  The District, as a public employer, can regulate Plaintiff's in-class teaching..........8

        2.  Even if Plaintiff was not speaking as an employee, Plaintiff cannot meet the third prong of the test for protected speech and therefore, has no First Amendment claims..................................................................................................10

    B.     Plaintiff's Second Cause of Action Mirrors Her First Cause of Action and Is Likewise Meritless ...................................................................................13

    C.     "Class of one" Equal Protection claims are not recognized in the employment context as matter of law ..........................................................................13

    D.     As an at will employee, Plaintiff has no recognizable property right in her continued employment with the District, and therefore cannot maintain a Due Process claim ....................................................................................15

        1.  Plaintiff was an at-will employee and therefore, did not have a property right to her continued employment...............................................................16

        2.  The District afforded Plaintiff sufficient Due Process despite her lack of entitlement to it .................................................................................17

IV.    CONCLUSION....................................................................................................19

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

i                    --

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Armstrong v. Meyers*, 964 F.2d 948 (9th Cir. 1992)......................................................18

*Ballistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir.1990)....................................7

*Barron v. Reich*, 13 F.3d 1370 (9th Cir.1994)..............................................................7

*Bd. of Regents v. Roth*, 408 U.S. 564............................................................................16

*Bd. of Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) ...............................11

*Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217 (2000)...................11

*Bishop v. Aronov*, 926 F.2d 1066 (11th Cir. 1991)......................................................12

*Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990) ..............................12

*Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002).......................................................11, 13

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir.1994) ....................................7

*Cleveland Bd. of Educ. v. Loudermilk*, 470 U.S. 532 (1985)....................................16, 17

*Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036 (6th Cir. 2001) ...........................12

*Connick v. Myers*, 461 U.S. 138 (1983).............................................................7, 8, 10, 14

*Edwards v. California Unvi.*, 156 F.3d 488 (3d Cir. 1998) ...........................................12

*Engquist v. Oregon Dept. of Agriculture*, 128 S.Ct. 2146 (2008) ...........................14, 15

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...................................................8, 9, 10, 15

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir.1997)..............................7

*Hudson v. Craven*, 403 F.3d 691 (9th Cir.2005) ...........................................................13

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir.2003)...........................................................6

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED]
ORDER (Fed.R.Civ.Pro. 12(b)(6))

ii

*In re Fortune System Sec. Litig*, 604 F.Supp.150 (N.D. Cal.1984) ................................................7

*Lawson v. Umatilla County*, 139 F.3d 690 (9th Cir. 1998) ...........................................17

*Lee v. York County Sch. Dist.*, 484 F.3d 687 (4th Cir. 2007) ....................................11, 12

*Marable v. Nitchman*, 511 F.3d 924 (9th Cir. 2007) ....................................................8, 9

*Mayer v. Monroe County Community School Corporation*,
474 F.3d 477, 479 (7th Cir. 2007) .........................................9, 10, 12, 13

*Miller v. State of California*, 18 Cal.3d 808 (1977).................................................16, 17

*Palmer v. Board of Education*, 603 F.2d 1271 (7th Cir. 1980) ......................................12

*Pareto v. F.D.I.C.,* 139 F.3d 696 (9th Cir.1998) .........................................................6

*Peloza v. Capistrano Unified School Dist.*, 782 F.Supp.1412 (C.D.Cal. 1992) ......................10, 12

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993).....................................17

*Stupy v. U.S. Postal Service*, 951 F.2d 1079 (9th Cir. 1991)..........................................15

*Sweezy v. New Hampshire*, 354 U.S. 234 (1957).........................................................11

*Urofsky v. Gilmore*, 216 F.3d 401 (4th Cir. 2000)..............................................10, 11

*Vaca v. Sipes*, 386 U.S. 171 (1967) ...................................................................15

*Waters v. Churchill*, 511 U.S. 661 (1994) ...............................................................14

*Webster v. New Lenox School District*, 917 F.2d 1004 (7th Cir. 1990).............................12

## Statutes

California Education Code §87482.5.................................................................3, 16

California Education Code §87665...................................................................17

Federal Rule of Civil Procedure 12(b)(6) ...........................................................2, 6, 7

42 U.S.C. § 1983....................................................................................2, 6, 13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER  (Fed.R.Civ.Pro. 12(b)(6))

iii

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 21, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled court, located at 280 South 1st Street, San Jose, California, Defendants the Trustees of the San Jose/Evergreen Community College District ("District"): Balbir Dhillon, Maria Fuentes, Autumn Guiterrez, Richard Hobbs, Ronald J. Lind, Randy Okamura and Richard K. Tanaka, all in their official and individual capacities; the District's Chancellor, Rosa Perez, in her individual and official capacities, the District's Vice Chancellor of Human Resources, Anita L. Morris, in her individual and official capacities; College President, Michael L. Burke, in his individual and official capacities; and the College's Dean of the Division of Math and Science, Leandra Martin, in her individual and official capacities (collectively "Defendants") will and do hereby move this Court to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

The Motion is based on this Notice of Motion and Motion and Memorandum of Points and Authorities, contained herein, all pleadings in this action, as well as any evidence and arguments that may be offered at a hearing upon this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff June Sheldon is a former temporary faculty employee of San Jose City College ("College"), owned and operated by the District. Effective February 13, 2008, Plaintiff's employment with the District was terminated following a student complaint, which stated that during a lecture in a Human Heredity class, Plaintiff presented the following "facts" as scientific truths:

1) stress during pregnancy causes male homosexuality as proven by a German study;

2) there are hardly any gay men in the Middle East because the women are treated very nicely;

3) there are not any real lesbians rather women simply get tired of relationships with men and pursue them with women; and

4) if the men in the class wanted a nice and strong son, they should treat their wives very nicely, like open the door for them, and if they wanted a "sensitive" son, they should abuse their wives.

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

(See Complaint at Exhibit 8.) Plaintiff's employment with the District was terminated after an investigation substantiated the student's complaint. According to Plaintiff, she has a right to teach her students that this is the origin of homosexuality. However, the District, not Plaintiff, has the right to determine what is and what is not part of its curriculum on this topic.

Plaintiff has filed this lawsuit pursuant to 42 U.S.C. §1983 alleging that she was wrongfully terminated in contravention of her First Amendment Rights and her rights under the Collective Bargaining Agreement ("CBA") between the District and the Faculty Association, to which Plaintiff is a member. Plaintiff has filed this lawsuit against the Trustees of the District: Balbir Dhillon, Maria Fuentes, Autumn Guiterrez, Richard Hobbs, Ronald J. Lind, Randy Okamura and Richard K. Tanaka, all in their official and individual capacities; the District's Chancellor, Rosa Perez, in her individual and official capacities, the District's Vice Chancellor of Human Resources, Anita L. Morris, in her individual and official capacities; College President, Michael L. Burke, in his individual and official capacities; and the College's Dean of the Division of Math and Science, Leandra Martin, in her individual and official capacities (collectively "Defendants").

Plaintiff's Complaint consists of four claims brought pursuant to 42 U.S.C. §1983: 1) First Amendment Retaliation; 2) Violation of Plaintiff's First Amendment Rights; 3) Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection; and 4) Violation of Plaintiff's Fourteenth Amendment Right to Due Process. Defendants hereby move to dismiss each of these claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) as Plaintiff cannot state a claim for the following reasons:

1) Plaintiff cannot state a First Amendment claim as she was not engaging in protected speech;

2) Plaintiff cannot maintain an Equal Protection claim as a "class of one" because this is a public employment dispute; and

3) Plaintiff cannot state a claim for violation of her due process rights because she does not have a property right to her employment with the District as an at will employee. Moreover, Defendants afforded her due process as required by the Constitution, thus extinguishing any claim of lack of due process.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

2

## II.   BACKGROUND

### A.   FACTUAL BACKGROUND

During the Summer 2007 semester, Plaintiff was employed as an adjunct faculty member by the District. (Complaint at ¶¶15, 24.) An adjunct faculty member is a part-time temporary employee who teaches less than 60% of the hours per week assigned to full-time faculty. (Complaint, Ex. 6 at Article 9.12.1; see also Cal. Educ. Code §87482.5.) Plaintiff was hired to teach the Human Heredity course at the College during the Summer 2007 semester, an introductory level course for students who were not science majors. (Id. at ¶¶ 24-25.) On or about June 21, 2007, while teaching a Human Heredity class, Plaintiff answered a student's question about the heredity and homosexual behavior in males and females.[1] (Id. at ¶28.) According to Plaintiff, she answered the student's question by discussing the complexity of the issue and referring to the textbook and to a study by a German scientist that found a link between maternal stress during pregnancy, male androgens and male homosexual orientation at birth that is not contained in the textbook. (Id. at ¶¶ 29-30.) As for female homosexuality, Plaintiff claims she stated that she did not know if the German scientist found a link between female homosexuality and maternal stress. (Id. at ¶ 30.) Moreover, Plaintiff claims that she told the students that the German scientist's views were just one set of theories on the topic. (Id.)

Approximately one month later, a student sent a letter to the College detailing a complaint about this lecture. This student complaint is attached to Plaintiff's Complaint as Exhibit 8. The student's description of the contents of the lecture varies substantially from the allegations of Plaintiff's Complaint. The student states that during the June 21, 2007 lecture Plaintiff said:

1) stress during pregnancy causes male homosexuality as proven by a German study;

2) there are hardly any gay men in the Middle East because the women are treated very nicely;

---

[1] For the purposes of the Motion to Dismiss, Defendants and the Court must treat all of Plaintiffs well pled allegations as true. Defendants' use of the facts as pled in Plaintiff's Complaint is not an admission of their truthfulness.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

3) there are not any real lesbians, rather women simply get tired of relationships with men and pursue them with women; and

4) if the men in the class wanted a nice and strong son, they should treat their wives very nicely, like open the door for them, and if they wanted a "sensitive" son, they should abuse their wives.

The student said that Plaintiff's comments were given as hard science and were highly offensive. (Complaint, Exhibit 8.)

Upon receiving this student complaint, the Dean of the Math and Science division, Defendant Martin, contacted Plaintiff to schedule a meeting to discuss the complaint. (Complaint at ¶36.) This meeting took place on or about September 6, 2007. (Id. at ¶63.) Plaintiff and two union representatives, Barbara Hanfling and Deborah DeLaRosa, met with Defendant Martin and Lois Lund, the Dean of the Division of Language Arts. (Id.) Defendant Martin gave Plaintiff a copy of the student complaint. (Id at 65.) During the meeting, Plaintiff agreed to meet with full-time faculty to discuss teaching controversial topics and mainstream scientific thought. (Id. at ¶¶74 & 75.) The scheduling of this meeting with the full time faculty was confirmed by Plaintiff's union representative in an email to Defendant Martin on September 10, 2007. (Id. at ¶4; Exhibit 9.) However, Plaintiff later refused to meet with the other faculty members and on her own decided that a diversity workshop could substitute for the meeting. (Id. at ¶78; Exhibit 10.)

On December 6, 2007, Defendant Martin issued a letter on her investigation of the student complaint. (Id. at ¶83.) In this letter, attached as Exhibit 13 to the Complaint, Defendant Martin wrote:

> I have concluded an investigation on a student complain[t] filed against June Sheldon on July 25, 2007. I met with June and the FA on September 6, 2007. During this meeting, June admitted stating in her Human Heredity course that mistreatment to pregnant women at a certain point in the pregnancy can cause male homosexuality. She also stated that there was no such thing as true female homosexuality. She stated that she believed her opinions were consistent with mainstream scientific thought by the biology community.

(Complaint, Exhibit 13.) Defendant Martin went on to note Plaintiff's cancellation of the meeting to discuss these issues with the biology faculty and her discussions with the biology faculty regarding mainstream scientific thought on the nature versus nurture question of

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

4

homosexuality. (Id.)  In regards to male homosexuality, all four professors stated that

mainstream scientific thought was that "a combination of genetic and environmental factors

were involved in homosexuality." (Id.)  And three of the four professors stated that they

"strongly felt that the scientific community was in agreement that there were female

homosexuals," while the fourth professor refrained from commenting because she had not done

any reading on the topic. (Id.)  Defendant Martin concluded that Plaintiff was "teaching

misinformation as science in a science course" and that "these statements were grievous enough

to warrant withdrawing [Plaintiff's] SRP[2] status and Spring '08 assignment." (Id.)

On December 18, 2007, Defendant Anita Morris, the District's Vice Chancellor for

Human Resources, sent Plaintiff a letter, which is attached as Exhibit 16 to the Complaint. (Id.

at ¶95.)  In the letter, Defendant Morris informed Plaintiff that Plaintiff was removed from the

SRP list and was terminated, pursuant to California Education Code §87665, subject to final

board approval. (Id., Exhibit 16.)  The District's Board heard the matter at its February 12,

2008 Board Meeting.  After notice thereof, Plaintiff exercised her right to have the Board hear

the complaint against her in open session. (Id. ¶¶105, 107, 111; Exhibits 18, 20 21.)  At the

hearing, Plaintiff's counsel spoke on her behalf and Plaintiff presented the Board with a packet

of information, which the Board accepted. (Id. at ¶¶111, 112 & 116; Exhibits 21 & 23.)  The

Board deliberated in closed session with regards to the complaint against Plaintiff and voted to

terminate Plaintiff effective February 13, 2008. (Id. at ¶112; Exhibit 21.)

### B.   PROCEDURAL BACKGROUND

On March 20, 2008, Ms. Sheldon began grievance proceedings pursuant to the

Collective Bargaining Agreement ("CBA") and filed a Level I Grievance. (Id. at ¶118, Exhibit

24.)  The Grievance Procedures are set forth in Article 3 of the CBA, Exhibit 6 to the

Complaint, and include three levels or steps to be taken by a faculty member to challenge a

violation or misapplication of the terms of the CBA.  Plaintiff alleges that she filed Level I and

Level II grievances, which were both rejected by the District. (Complaint at ¶¶ 118, 123, 128 &

---

[2] "SRP" refers to the Seniority Rehire Preference List established by Article 9, Section 9.12 of the Collective
Bargaining Agreement between the District and the Faculty Association.  This SRP lists establishes the order of
preference for the rehiring and assignment of qualified adjunct faculty. (Complaint, Exhibit 6 at Art. 9, §9.12.1.)

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED]
ORDER (Fed.R.Civ.Pro. 12(b)(6))

5

129.)  Article 3, Section 3.9.4 of the CBA states that "Failure by the Faculty Association or grievant to appeal a decision within the specified time limits shall be deemed as acceptance of the decision."  (Complaint, Exhibit 6 at §3.9.4.)  Moreover, Section 3.9.10 states "Nothing in this article shall be interpreted to preclude a faculty member from seeking remedies provided by law after the exhaustion of this procedure."  (Complaint, Exhibit 6 at §3.9.10.)  Plaintiff does not allege nor did she file a Level III grievance

On July 16, 2008, Plaintiff filed the Complaint at issue, which the Defendants now move to dismiss.

### III. ARGUMENT

Plaintiff's Complaint consists of four claims brought pursuant to 42 U.S.C. §1983: 1) First Amendment Retaliation; 2) Violation of Plaintiff's First Amendment Rights; 3)Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection; and 4) Violation of Plaintiff's Fourteenth Amendment Right to Due Process.  Defendants hereby move to dismiss each of these claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) as Plaintiff cannot state a claim for the following reasons:

1)    Plaintiff cannot state a First Amendment claim as she was not engaging in protected speech, because when she was teaching a class, she was not speaking as a citizen but as an employee of the District performing part of her official duties.  Additionally, the District's rights to establish its curriculum outweighed any interest Plaintiff had in teaching her own opinions to students;

2)    As this is a public employment dispute, Plaintiff cannot maintain an Equal Protection claim as a "class of one;" and

3)    Plaintiff cannot state a claim for violation of her due process rights as she does not have property right to her employment with the District, because she was a temporary employee.  Additionally, or in the alternative, Defendants afforded her due process.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199 (9th Cir. 2003).  In other words, a motion to dismiss under Rule 12(b)(6) requires a determination of whether the facts alleged in a complaint, if proven, would or could support a claim for relief.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Dismissal of a claim or claims for relief pursuant to such a motion is proper where the complaint suffers from either a "lack of a cognizable legal theory" or "the absence of

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

6

sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). As such, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the Court must accept all material well pled allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). However, the Court is not required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Nor must the Court accept as true allegations that are contrary to the documents attached to the complaint. *In re Fortune System Sec. Litig.*, 604 F. Supp.150, 159-160 (N.D. Cal. 1984) (citing *Olpin v. Ideal National Insurance Co.,* 419 F.2d 1250 (10th Cir. 1969).

### A. Plaintiff Was Not Engaged In Protected Speech And Therefore Cannot State A Claim For Retaliation in Violation Of Her First Amendment Rights.

In her First Cause of Action for Retaliation in Violation of her First Amendment Rights, Plaintiff claims that "[b]y subjecting Ms. Sheldon to a lengthy and intrusive investigation and terminating her employment based on her protected expression in answering a student's in-class question on a matter of public concern, among other things, Defendants, by policy and practice, have retaliated against Plaintiff because of her free expression and deprived her of the ability to freely express her ideas on issues of public concern at [the College]." (Complaint at ¶138.) Based on this alleged violation, Plaintiff seeks monetary and punitive damages and declaratory and injunctive relief reinstating her employment and returning her SRP List position. (Id. at ¶¶140 & 141.) Plaintiff's claim, however, is legally deficient because Plaintiff was not engaged in protected speech when she answered a student's question in class.[3] Therefore, the District could not and did not violate her First Amendment rights by terminating her employment and removing her from the SRP List.

---

[3] "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) (internal citations omitted).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER  (Fed.R.Civ.Pro. 12(b)(6))

7

**1. The District, as a public employer, can regulate Plaintiff's in-class teaching.**

In order to establish a claim for retaliation in violation of the First Amendment, Plaintiff must allege and prove that: 1) she engaged in protected speech; 2) she suffered an adverse employment action; and 3) her speech was a substantial or motivating factor for the adverse employment action. *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007). At issue in this Motion, is the first prong of the test – Did Plaintiff engage in protected speech when she answered a student's in-class questions regarding issues that were part of the subject matter of the class she was hired to teach? The simple answer is No.

Although public employees do not surrender all their constitutional rights when they accept employment with a public entity, it is clear that the First Amendment protects a public employer's right to regulate an employee's speech in certain circumstances. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Specifically, the First Amendment protects a public employee's right to speak as a citizen on matters of public concern. *Id.* Current Supreme Court precedent sets forth a three part test for determining whether a public employee has engaged in protected speech.

First, the court must look to whether the employee was speaking as a citizen or as an employee performing part of his or her job-related duties. *Id.* at 418. "When employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if the employee is not speaking as part of his or her job duties, then his or her statements could be afforded First Amendment protection if they meet the last two parts of the test – whether the statements address a matter of public concern and whether the employee's interest in making those statements outweigh the public employer's interests in regulating the speech. *Id.* at 418. If both conditions are met, then the employee's speech has First Amendment protection. If not then the employee has no First Amendment speech protection and is subject to employer discipline for that speech. *Connick v. Myers*, 461 U.S. 138, 146, 154 (1983).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

8

Plaintiff's statements fail this test in two ways.  First, her statements were made pursuant to her official duties.  She was teaching a class the District had hired her to teach.  Therefore, she was not speaking as a citizen, but as an employee of the District and was subject to the District's regulation and reaction to her statements.  Second, the District's interest in establishing the content of the approved curriculum, i.e. the District's academic freedom to make curricular choices free from interference by outside forces, such as the judiciary, outweighs Plaintiff's right to teach her own opinions regarding a curricular subject.

Clearly, Plaintiff was speaking in the role of an employee, and not as a citizen, when she answered the student's questions during a class in a course that she was hired to teach.  On this issue the Ninth Circuit focuses on whether the employee was required as part of his or her official duties to make the statements at issue.  *Marable*, 511 F.3d at 932.  It is undeniable that Plaintiff was hired to teach students and answer their questions during a class period.  "[T]he school system does not "regulate" teachers' speech as much as it *hires* that speech.  Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary." *Mayer v. Monroe County Community School Corporation*, 474 F.3d 477, 479 (7th Cir. 2007) (emphasis in original) (applying *Garcetti* to an elementary school teacher's in class response to a student's question).  Therefore, Plaintiff was speaking as part of her official duties as an employee of the District at the time she made the statements at issue.  As such, according to the Supreme Court's ruling in *Garcetti*, Plaintiff's statements are not entitled to First Amendment protection, and Plaintiff cannot state a claim based on the District's reaction to those statements. *Garcetti*, 547 U.S. at 421.

Plaintiff may argue that the Court should not apply in *Garcetti* in this situation, because the Supreme Court in *Garcetti* expressly declined to determine whether the "employee-official duty" test would apply to "teaching and scholarship."[4]  *Garcetti*, 547 U.S. at 425.  The *Garcetti* court did not hold that the "employee-official duty" test  does not apply in the area of "teaching and scholarship", but rather recognized that the issue required additional consideration, because

---

[4] The Ninth Circuit has not addressed the applicability of *Garcetti* to the public education setting.  However, the Seventh Circuit has already applied *Garcetti* to the elementary and secondary level of education for a teacher's in class statements. See *Mayer*, 474 F.3d at 479.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER  (Fed.R.Civ.Pro. 12(b)(6))

1  neither teaching nor scholarship were implicated in the facts before it. *Id*. This Court, however

2  is squarely presented with the issue and clearly *Garcetti* should apply here.[5] Therefore,

3  Defendants had the right to regulate what Plaintiff said in class while teaching –i.e. while

4  performing the task she was hired to perform. Plaintiff in this situation is an employee and does

5  not have a First Amendment cause of action for the Defendants' regulation of her in-class

6  speech.

7      **2.  Even if Plaintiff was not speaking as an employee, Plaintiff cannot meet
           the third prong of the test for protected speech and therefore, has no**

8      **First Amendment claims.**

9      Even if it was determined that Plaintiff was not speaking as an employee, she still would

10  not be able to state a claim for violation of her First Amendment rights. The Court would still

11  have to apply the second and third prongs of the test for protected speech. *Garcetti*, 457 U.S. at

12  418. Therefore, Plaintiff must prove that she was speaking on a matter of public concern[6] and

13  that her right to teach her own personal view point outweighs the District's right to control the

14  content of its curriculum and education its students receive. *Id*. If the government's interest in

15  functioning efficiently and effectively requires the ability to limit the employee's speech, even

16  one speaking as a citizen on a matter of public concern, more  than it could limit the speech of a

17  general citizen, then the public employee does not have First Amendment protection. *Id*. at 419

18  (citing *Connick*, 461 U.S. at 147). Indeed, the First Amendment does not empower public

19  employees to "constitutionalize the employee grievance." (*Id*. at 420) Plaintiff cannot meet this

20  last requirement as a matter of law. The ability of an academic institution to regulate in class

21  speech has always been found to outweigh a teacher's ability to teach whatever they want.

22  *Urofsky v. Gilmore*, 216 F.3d 401, 414 (4th Cir. 2000).

23

24  ─────────────────

25  [5]  Indeed, the area of teaching by public employees provides a stronger basis for application of the *Garcetti* rule than
the actual facts of *Garcetti*. As the Seventh Circuit noted in *Mayer*, a teacher is hired to speak – to teach the
curriculum the District has prescribed; "the school system does not regulate speech it hires it." *Mayer*, 447 F.3d at

26  479. If a school district where not able to control what its employees taught to its students, then the established
curriculum would be meaningless, and teachers would be free to ignore such curriculum and teach whatever they

27  wanted. *See Peloza v. Capistrano Unified School Dist.*, 782 F.Supp. 1412, 1417 (C.D.Cal. 1992) *rev'd in part on
other grounds by Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517 (9th Cir. 1994).

28  [6]  This Motion does not address the second prong, because Plaintiff has alleged that the subject matter was of public
concern.  However, the Defendants do not intend for this to imply that they agree with Plaintiff's allegations in this
regard.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED]
ORDER  (Fed.R.Civ.Pro. 12(b)(6))

10

Here, the District's substantial interests in regulating what is taught in its classrooms and how it is taught outweigh Plaintiff's interests in this situation. First the District, and not Plaintiff, is charged with and has the right to determine the content of the curriculum taught at the College. Secondly, the District has a compelling interest as an employer in the efficient operation and teaching of that curriculum. On the other hand, Plaintiff, by accepting a job teaching at the College, surrendered her right to speak her mind in the classroom and took on the duty to speak as and for the District and the College as directed by the District and the College. As such, Plaintiff has not alleged, nor can she, that she possesses an interest in teaching her class as she sees fit that trumps the well established rights of the District.

In terms of in-class speech, the Ninth Circuit has stated that universities and post-secondary institutions have the authority to determine for themselves on academic grounds <u>who may teach, what may be taught, how it shall be taught</u>, and who may be admitted to study. *Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002) (emphasis added). "In summary, under the Supreme Court's precedents, the curriculum of a public educational institution is one means by which the institution itself expresses its policy, a policy with which others do not have a constitutional right to interfere." *Id.* (citation omitted). Moreover, in *Brown v. Li*, the Ninth Circuit said that in terms of a university's regulation of curricular speech versus an elementary or secondary school's regulation of curricular speech, in its precedents, the Supreme Court has implied that a university's control may be broader. *Id.* (citing *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217 (2000); *Bd. of Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985); *Sweezy v. New Hampshire*, 354 U.S. 234 (1957).

In fact, after a review of the history of academic freedom in case law, the Fourth Circuit in *Urofsky v. Gilmore* concluded that the Supreme Court has "never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so." *Urofsky*, 216 F.3d at 414 (denying claims that as professors plaintiffs were entitled to greater constitutional protection than regular citizens). As such, the District's right to establish and regulate the content of its curriculum outweighs any interest Plaintiff may have in espousing her own views of curricular subjects while teaching. *See Lee v. York County Sch. Dist.*, 484 F.3d 687, 695 (4th Cir.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

11

2007)("Courts have generally recognized that the public schools possess the right to regulate speech that occurs within a compulsory setting, and that a school board's ability in this regard exceeds the permissible regulation of speech in other governmental workplaces or forums"); *Mayer*, 474 F.3d at 480-81 ("The Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials."); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1054 (6th Cir. 2001)(school board's interest in regulating curriculum outweighed teacher's interest in selecting supplemental materials and teaching methods); *Edwards v. California Univ.*, 156 F.3d 488, 491 n.1 (3d Cir. 1998) (recognizing that public school teachers must follow school policy and dictates when choosing curriculum and public school teacher's in class speech is not protected by the First Amendment); *Bishop v. Aronov*, 926 F.2d 1066, 1073 (11th Cir. 1991) (holding that "Where the in-class speech of a teacher is concerned, the school has an interest . . . in scrutinizing expressions that the public might reasonably perceive to bear its primatur") (internal quotations omitted); *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) (holding a teacher's in-class conduct is not protected speech -- "Although a teacher's out-of-class conduct, including her advocacy of particular teaching methods, is protected, her in-class conduct is not.") (internal citations omitted); *Webster v. New Lenox School District*, 917 F.2d 1004, 1007 (7th Cir. 1990) ("The First Amendment is not a 'teacher license for uncontrolled expression at variance with established curricular content." quoting *Palmer v. Board of Education*, 603 F.2d 1271, 1274 (7th Cir. 1980)).

The District's public function is to educate its students. It does this by setting a curriculum and hiring teachers to teach that curriculum to its students. To carry out this public function effectively and efficiently, it must be able to control the in class conduct and speech of those teachers. Otherwise, "if every teacher chose to teach the areas he or she personally believed in and omitted those topics which are different from beliefs they hold, a curriculum compiled by the state and the local district would be useless." *Peloza v. Capistrano Unified School Dist.*, 782 F.Supp. 1412, 1417 (C.D.Cal. 1992) *rev'd in part on other grounds by Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517 (9th Cir. 1994). Therefore, the District and Defendants' have a substantial interest in effectively achieving its public function, the education

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER  (Fed.R.Civ.Pro. 12(b)(6))

12

of its students, that requires the ability to limit Plaintiff's in-class speech, even if she was speaking on a matter of public concern.

On the other hand, the burden on Plaintiff's free speech in this case was limited to her in class statements made in the context of teaching a class she was hired to teach. Plaintiff was and is free to advocate for the inclusion of her theories in the curriculum and discuss them with colleagues or in public forums. See *Hudson v. Craven*, 403 F.3d 691, 699 (9th Cir. 2005) (restriction by college of professor's speech and associational rights limited and therefore, not burdensome.) Plaintiff's rights <u>as a citizen</u> to discuss her views on the origins of homosexuality are not burdened by the Defendants' regulation of her in-class speech. Basically, Plaintiff is free to speak her mind as long as she is not speaking pursuant to her job duties at the time. The issue before the Court is limited to Plaintiff's in class curricular speech. It is that speech that the District hired and that it has the ability to regulate. *Brown*, 308 F.3d at 951; *Mayer*, 447 F.3d at 479. Consequently, Plaintiff's interests in deciding for herself what she should be teaching are slight and greatly outweighed by the District's substantial interest in determining for itself what is to be taught and how it is to be taught. Therefore, Plaintiff did not engage in constitutionally protected speech and cannot state a claim for violation of her First Amendment rights.

### B.  Plaintiff's Second Cause of Action Mirrors Her First Cause of Action and Is Likewise Meritless.

Plaintiff's Second Cause of Action for "Violation of Plaintiff's First Amendment Rights to Freedom of Speech and Academic Freedom (42 U.S.C. §1983)" is based verbatim on identical word for word allegations and requests for relief as her First Cause of Action. (compare Complaint at ¶¶142-146 with Complaint at ¶¶137-141.) Therefore, this Cause of Action is duplicative of the First Cause of Action and should be dismissed for the same reasons as set forth above.

### C.  "Class of one" Equal Protection claims are not recognized in the employment context as matter of law.

Plaintiff's third cause of action is for violation of her right to Equal Protection, wherein Plaintiff alleges that "by subjecting her to a lengthy and intrusive investigation and terminating her employment based on her answer to a student's in class question on a matter of public concern, Defendants, by policy and practice, have treated Plaintiff differently from similarly

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

13

1  situated teachers and professors at the District and deprived Plaintiff of her ability to freely

2  express her ideas on issues of public concern at SJCC." (Complaint at ¶148.) Moreover,

3  Plaintiff alleges that "[o]n information and belief, other adjunct lecturers and faculty in the

4  District have not been investigated and terminated for answering a student's question about

5  class material." (Complaint at ¶117.) As such, Plaintiff claims she is the only one who has

6  been treated differently than her similarly situated teachers and professors.

7        The Equal Protection clause prohibits the government from arbitrarily singling out

8  persons or groups and intentionally treating them differently than others similarly situated

9  without any rational basis for doing so. *Engquist v. Oregon Dept. of Agriculture*, 128 S.Ct.

10 2146, 2153 (2008). However, equal protection jurisprudence like First Amendment

11 jurisprudence has long since recognized the difference between the state as a lawmaker and the

12 state as an employer. *Id.* at 2153. In fact the Supreme Court in *Engquist* looked to the First

13 Amendment cases of *Connick* and *Waters v. Churchill* to explain how the government's role as

14 an employer changes the constitutional analysis. *Id.* "The government as employer indeed has

15 far broader powers than does the government as sovereign." *Id.* (quoting *Waters v. Churchill*,

16 511 U.S. 661, 671 (1994) (plurality opinion)). "The extra power the government has in this area

17 comes from the nature of the government's mission as employer.. Government agencies are

18 charged by law with doing particular tasks. Agencies hire employees to help do those tasks as

19 effectively and efficiently as possible." *Id.* (quoting *Waters*, 511 U.S. at 674-675). The

20 government has a legitimate interest "in promoting efficiency and integrity in the discharge of

21 official duties, and in maintaining proper discipline in public service." *Id.* (quoting *Connick v.*

22 *Myers*, 461 U.S. 138, 150-151 (1983) (citation omitted). Given that "government offices could

23 not function if every employment decision became a constitutional matter," *Connick*, 461 U.S.

24 at 143, the constitutional analysis of the government's actions as an employer regarding

25 employees has to be different than that of its actions as sovereign regarding citizens. *Engquist*,

26 128 S.Ct. at 2151 (citing *Waters*, 511 U.S. at 674).

27        Therefore, the Supreme Court held that with respect to the Equal Protection clause and

28 the government as public employer, a claim based on a class-of-one – that an employee was

treated differently than all other employees, but without allegations of differential treatment due

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

14

to the plaintiff's membership in a protected class – is not a cognizable claim. *Id.* at 2155-56. Otherwise, the Supreme Court noted that almost all personnel decisions involved treating an individual differently from the other employees. *Id.* at 2156. Therefore, "any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.* "The Equal Protection clause does not require '[t]his displacement of managerial discretion.'" *Id.* at 2157 (quoting *Garcetti*, 547 U.S. at 423).

This is exactly the type of Equal Protection claim that Plaintiff alleges – she was the only adjunct lecturer or faculty singled out for termination as a result of answering a student's in class question. (Complaint at ¶117.) Moreover, she does not allege that she was treated differently because she is a member of a protected class. Therefore, her claim falls squarely into the holding of *Engquist*, is not cognizable as a matter of law and should be dismissed with prejudice.

### D. As an at will employee, Plaintiff has no recognizable property right in her continued employment with the District, and therefore cannot maintain a Due Process claim.

In her last cause of action, Plaintiff alleges that Defendants violated her constitutional right[7] to due process by "by failing to explain the basis for terminating Plaintiff, disabling Plaintiff from defending herself and confronting the allegedly 'offended' student prior to termination, and failing to properly entertain and respond to Plaintiff's Level II grievance under the Collective Bargaining Agreement." (Complaint at ¶154.) In order to state a claim for violation of due process rights, Plaintiff must have a property right in her continued

---

[7] Plaintiff's Fourth Cause of Action also mentions alleged violations of procedures she claims to have been <u>contractually</u> entitled to, i.e. her contractual due process rights. (See Complaint at ¶154.) As discussed below, the Constitutional right to due process only requires certain procedures, which in this case were met. Therefore, any alleged right to more than what Plaintiff was entitled to under the Constitution, is not based on the Constitution and therefore can only be based on the CBA. As such, by claiming she is entitled to the additional due process required by the CBA and that that process was not fully afforded, Plaintiff's claim is really a breach of contract claim based on the CBA. Not only has Plaintiff not alleged a claim for breach of contract, but before filing a lawsuit based on a breach of a collective bargaining agreement, an employee must exhaust the grievance procedures set forth in the CBA. *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *Stupy v. U.S. Postal Service*, 951 F.2d 1079, 1082 (9th Cir. 1991). Plaintiff failed to do so prior to filing this lawsuit as she did not file a Level III grievance to arbitrate the matter and she has not alleged an excuse for failure to do so. Therefore, all claims based on her rights pursuant to the CBA are barred and must be dismissed.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

15

employment with the District. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-570. If she has a property right, then she is entitled to notice and opportunity to respond prior to her termination and post termination administrative procedures as determined by California law. *Cleveland Bd. of Educ. v. Loudermilk*, 470 U.S. 532, 547-548 (1985). Here, taking all allegations in Plaintiff's Complaint as true, she cannot state a claim for relief pursuant to the Due Process clause on two grounds: 1) she was an at-will employee and therefore, did not have a property right to continued employment; and 2) even if she did have some property right, she was afforded due process through a pre-termination hearing before the Board of Trustees and the post-termination grievance process under the CBA. As such, her fourth cause of action should be dismissed with prejudice.

### 1. Plaintiff was an at-will employee and therefore, did not have a property right to her continued employment.

In order to state a claim for violation of her due process rights, Plaintiff must have a property interest in her continued employment. *Roth*, 408 U.S. at 567. To have a property right, Plaintiff must have a legitimate claim to entitlement to her continued employment, not just a unilateral expectation of it. *Id.* Property interests are not created by the Constitution, but rather arise from independent sources, such as state law. *Id.* at 577. Looking to California law, it is clear that Plaintiff had no entitlement to continued employment and therefore, no property right to her job. In California, public employment is not held by contract but rather by statute. *Miller v. State of California*, 18 Cal.3d 808, 813 (1977). As to the duration of such employment, "no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." *Id.*

In this case, Plaintiff was employed by the District as an adjunct faculty member. (Complaint at ¶15.) An adjunct faculty member is a part-time temporary employee who teaches less than 60% of the hours per week assigned to full-time faculty. (Complaint, Ex. 6 at Article 9.12.1; see also Cal. Educ. Code §87482.5.) California law states that as a temporary employee of a community college district – i.e. one carrying less than 60% of a full-time load – Plaintiff's employment was at-will: "The governing board may terminate the employment of a temporary employee at its discretion at the end of a day or week, whichever is appropriate. The decision to

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

terminate the employment is not subject to judicial review except as to the time of termination." Cal. Educ. Code §87665. When employment is at-will under California statutory law "the claimant has no property interest in the job" and an action pursuant to the Due Process clause cannot lie for Plaintiff's termination. *Portman v. County of Santa Clara*, 995 F.2d 898, 904-905 (9th Cir. 1993). Therefore, Plaintiff's Fourth Cause of Action should be dismissed with prejudice.

To the extent that Plaintiff claims her statutory at-will status was altered by the terms of the CBA, such as by the SRP list provisions, this argument is legally and factually without merit. First, the California Supreme Court has held that "the statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contract in conflict therewith." *Miller,* 18 Cal.3d at 813. Therefore, the Education Code trumps any provision in the CBA that attempts to change the at-will status of Plaintiff's employment. Moreover, the very terms of the CBA SRP provisions belie any pre-emption of statutory law. Section 19.12.1 specifically states that "SRP status does not . . .provide tenure, permanent status or related rights" (Complaint, Ex. 6 at §9.12.1.) Therefore, the terms of the CBA facially do not alter the at-will nature of Plaintiff's employment. See *Lawson v. Umatilla County*, 139 F.3d 690, 693 (9th Cir. 1998) (interpreting similar state law and contractual language and holding that the contract retained the at-will status of the employment). Consequently, the CBA cannot and does not after Plaintiff's at-will status, and must be dismissed with prejudice.

Plaintiff is without a property interest in her employment and therefore, Plaintiff's Due Process claim must be dismissed with prejudice.

### 2. The District afforded Plaintiff sufficient Due Process despite her lack of entitlement to it.

Additionally, or alternatively, should the Court find some sort of property interest, the District afforded Plaintiff with the level of due process required by the Constitution. Once a property right has been established, the Supreme Court has held that a public employee is entitled to two types of procedures: 1) a pre-termination provision of notice and an opportunity to respond; and 2) post-termination administrative procedures. *Loudermilk*, 470 U.S. at 547-548. In this case, Plaintiff, by the very allegations of her Complaint, was given both.

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

In terms of the pre-termination "hearing," it need not be elaborate or a full evidentiary hearing. *Id.* at 545. But rather, all that the Constitution requires is notice and an opportunity to respond. *Id.* at 546. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to be heard." *Id.* Here, Plaintiff admits that Defendant Martin presented her with a copy of the student complaint at their September 6, 2007 meeting. (Complaint at ¶65; Exhibit 8.) Then on December 18, 2007, Defendant Morris sent Plaintiff a letter indicating that the District's investigation of the student complaint had been sustained and that Plaintiff was being removed from the SRP list and terminated pending final Board Approval. (Complaint at ¶¶95-97, 100; Exhibit 16.) Then prior to the Board meeting at which her termination would be discussed, Plaintiff received two notices of her right to have the complaint against her discussed during the open session of the Board Meeting. (Complaint at ¶¶105, 107-108; Exhibits 18 & 20.) Therefore, it can hardly be argued that Plaintiff did not receive notice of the charges against her.

Moreover, she exercised her right to have the complaint against her heard by the Board in open session, and on February 12, 2008, was given the opportunity to address the allegations of the student complaint and present her side of the story – both through the presentation of documents and argument of counsel. (Complaint at ¶¶111-112, 116.) Thus, Ms. Sheldon was given notice and the opportunity to be heard prior to her termination and was afforded her pre-termination due process rights, even though she was not constitutionally entitled to them.

Additionally, Plaintiff also had post-termination administrative procedures at her disposal that met the minimum requirements for constitutional post-termination due process. Pursuant to the CBA, Plaintiff was entitled to file a grievance regarding her alleged violations of the terms of the CBA and allegedly improper removal from the SRP list and termination. (Complaint, Exhibit 6, at Article 3.) The Ninth Circuit has held that grievance procedures pursuant to a collective bargaining agreement that end in arbitration, even when as here the last arbitration step requires union representation, satisfies the requirements for post-termination due process. *Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992). Therefore, the District afforded an administrative process to Plaintiff that met the requirements of due process. Consequently, any due process rights Plaintiff may claim to have were met by the District both

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED] ORDER (Fed.R.Civ.Pro. 12(b)(6))

18

1  before and after her termination, as established by the very allegations of her Complaint, and her

2  fourth case of action should be dismissed with prejudice.

3  ## IV.  CONCLUSION

4       As discussed above, Plaintiff's Complaint should be dismissed with prejudice in its

5  entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) as Plaintiff cannot state a cause of

6  action upon which relief can be granted for the following reasons:

7      1)     Plaintiff cannot state her First Amendment claims as she was not engaging in
8                protected speech;

      2)     because this is a public employment dispute, Plaintiff cannot maintain her "class
9                of one" Equal Protection claim; and

10      3)     Plaintiff cannot state a claim for violation of her due process rights because she
              does not have a property right to her employment with the District as an at will
11               employee.  Moreover, Defendants afforded her due process as required by the
12               Constitution, thus extinguishing any claim of lack of due process.

13
14  Dated: October ⎯2, 2008          **STUBBS & LEONE**

15

16                          LOUIS A. LEONE, ESQ.
                        Attorneys for Defendants
17                         BILBIR DHILLON, MARIA FUENTES,
                        AUTUMN GUTIERREZ, RICHARD HOBBS,
18                         RONALD J. LIND, RANDY OKAMURA,
19                         RICHARD K. TANAKA, ROSA G. PEREZ,
                        ANITA L. MORRIS, MICHAEL L. BURKE,
20                         AND LEANDRA MARTIN

21

22

23

24

25

26

27

28

---

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES; [PROPOSED]
ORDER (Fed.R.Civ.Pro. 12(b)(6))