**E-FILED on** 11/25/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUNE SHELDON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BILBIR DHILLON, MARIA FUENTES, AUTUMN GUTIERREZ, RICHARD HOBBS, RONALD J. LIND, RANDY OKAMURA, AND RICHARD TANAKA, in their individual and official capacities; ROSA G. PEREZ, in her individual and official capacities; ANITA L. MORRIS, in her individual and official capacities; MICHAEL L. BURKE, in his individual and official capacities; LEANDRA MARTIN, in her individual and official capacities;<br><br>　　　　Defendants. | No. C-08-03438 RMW<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>[Docket No. 26] |

Plaintiff June Sheldon ("Sheldon") brings this action under 28 U.S.C. § 1983 against the trustees of San Jose/Evergreen Community College District ("the District") and other District administrators (collectively "defendants") alleging violations of her rights under the First and Fourteenth Amendments to the Constitution. Defendants move to dismiss her claims, arguing that: (1) Sheldon's in-class speech was not protected by the First Amendment; (2) an equal protection claim cannot lie on the basis of a class of one in public employment; (3) as an at-will employee,

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

Sheldon had no constitutional property interest in her employment; and (4) the District, nonetheless, afforded Sheldon due process. Sheldon opposes the motion to dismiss. For the reasons stated below, the court denies defendants' motion to dismiss as to plaintiff's first and second claims based upon alleged violations of the First Amendment and grants it as to plaintiff's third and fourth claims predicated upon alleged violations of the Fourteenth Amendment.

## I. BACKGROUND

Sheldon received her bachelor's degree in molecular biology in 1975 and a master's degree in biology in 1978, both from San Jose State University. Between 1986 and 1993, she taught chemistry and biology in the Division of Math, Science, and Engineering at Evergreen Valley College, one of the two community colleges operated by the District. In 2004, she began teaching biology and microbiology at the other District-operated location, San Jose Community College ("SJCC"). During the Summer 2007 semester, Sheldon taught a course entitled Human Heredity. Around August 2, 2007, she received notice of a student complaint arising out of the class discussion on June 12, 2007 of Mendelian inheritance and the biological basis for homosexuality. After an internal investigation, on December 18, 2007 defendant Anita Morris, the District's Vice-Chancellor of Human Resources, sent Sheldon a letter informing her that the offer she had received to teach in the Spring semester was withdrawn, that she was removed form the adjunct seniority rehire preference list and that her employment was terminated as of that date, subject to final approval by the District Board of Trustees. Thereafter, the District approved the adverse action.

The facts of what actually occurred during the June 21, 2007 class are in significant dispute. However, at the motion to dismiss stage, the court assumes that the facts alleged in the complaint are true. *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 930 (9th Cir. 2008). What follows is Sheldon's version of what happened during the class and the investigation that followed as alleged in her complaint.

Sheldon's lecture on June 21, 2007 covered Mendelian inheritance, based on material in Chapter 4 of the course textbook, HUMAN GENETICS: CONCEPTS AND APPLICATIONS, by Ricki Lewis. Complaint ¶¶ 26-27. The class began with a short quiz concerning the previous day's

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

2

material. *Id.* at ¶ 27. After the quiz a student asked Sheldon how heredity affects homosexual behavior in males and females. *Id.* at ¶ 28. That question was based on a quiz question, the material in the textbook, and Sheldon's previous discussion of the topic. *Id.* According to the complaint, Sheldon "answered the student's question by noting the complexity of the issue, providing a genetic example mentioned in the textbook, and referring students to the perspective of a German scientist." *Id.* at ¶ 29. Sheldon also noted that the German scientist (whose name, she later recalled, is Dr. Gunter Dörner) had "found a correlation between maternal stress, maternal androgens, and male sexual orientation at birth." *Id.* at ¶ 30. Sheldon also stated that she was unaware of Dr. Dörner's finding a similar correlation for female sexual orientation. *Id.* She also mentioned that Dr. Dörner's views were only one set of theories in the "nature versus nurture" debate. *Id.* Finally, Sheldon briefly described what the students would learn later in the course, that "homosexual behavior may be influenced by both genes and the environment." *Id.* at ¶ 32.

In early August, defendant Leandra Martin ("Martin"), Dean of SJCC's Division of Math and Science e-mailed Sheldon regarding a student complaint. *Id.* at ¶ 36. On September 6, 2007, Sheldon met with Martin and others to discuss the complaint. *Id.* at ¶ 63. At that meeting, she was given a copy of the student complaint, which was neither signed nor dated. *Id.* at ¶ 65. The student's complaint states that during the June 21, 2007 class, Sheldon made "offensive and unscientific" statements, including that there "aren't any real lesbians" and that "there are hardly any gay men in the Middle East because the women are treated very nicely." Complaint Ex. 8. Around September 10, 2007, Sheldon received an e-mail recounting some of the events of the meeting, and noting that Sheldon would meet with full-time biology faculty to discuss some of the issues raised in the complaint. *Id.* at ¶ 74. Sheldon did agree at the meeting to confer with the biology faculty and discuss the topic of mainstream scientific thought. *Id.* at ¶ 75.

On October 19, 2007, Martin sent Sheldon an e-mail offering her a teaching assignment for the Spring 2008 semester, without mentioning the student complaint. *Id.* at ¶ 81. Sheldon responded to the e-mail and accepted the class assignment. *Id.* at ¶ 82. As a result of that teaching assignment, Sheldon determined that she would not need to seek alternate employment. *Id.* at ¶ 82.

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

3

On December 6, 2007, Martin issued a letter stating that she had investigated the allegations in the student complaint. *Id.* at ¶ 83. The letter also stated that Martin had spoken with Sheldon, as well as some members of SJCC's biology faculty regarding the statements attributed to Sheldon in the complaint. *Id.* at ¶ 86. Martin also wrote that she had concluded that Sheldon was teaching misinformation as science, and that the statements were grievous enough to warrant withdrawing her course assignments for the spring semester. *Id.* at ¶ 89.

On December 18, 2007, defendant Anita Morris, Vice Chancellor of Human Resources for SJCC, sent Sheldon a letter stating that because of the student complaint, Sheldon had been removed from teaching status. The letter also stated that District had the right to terminate any adjunct employee without cause, and that Sheldon was "hereby terminated, subject to final approval of the Board of Trustees." *Id.* at ¶ 100. After some additional correspondence, the Board of Trustees approved the termination of Sheldon's employment on February 12, 2008. *Id.* at ¶¶ 101-12.

On July 16, 2008, Sheldon filed a complaint alleging violations of her First and Fourteenth Amendment rights under the Constitution. Her first cause of action is for retaliation in violation of the First Amendment and claims that defendants terminated her employment based on her First Amendment protected answer to a student's in-class question. Complaint ¶¶ 137-41. Her second cause of action claims that defendants deprived her of First Amendment rights by discriminating against her protected speech based on its content and viewpoint. Sheldon's third and fourth causes of action allege violations of the Fourteenth Amendment's guarantees of equal protection and due process, respectively. Defendants move to dismiss all of Sheldon's claims. The court will consider each in turn.

## II. ANALYSIS

### A.     First Amendment Retaliation

Sheldon's First Amendment claim presents the question of what constitutional protection, if any, is afforded to classroom instruction.

Defendants rely heavily on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which they contend compels a determination that a public school teacher's classroom instruction does not constitute

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

4

protected speech within the meaning of the First Amendment because when engaging in classroom instruction, the teacher is performing her duties as a public employee and is not speaking as a private citizen.

The speech at issue in *Garcetti* was a memorandum in which Ceballos, a deputy district attorney for the Los Angeles County District Attorney's Office, described his concerns about possible "serious misrepresentations" in an affidavit used to obtain a search warrant. 547 U.S. at 413-415. After submitting the memorandum to his superiors, Ceballos asserted that he was subject to adverse employment actions in retaliation for engaging in speech protected by the First Amendment. The district court granted a motion for summary judgment in favor of Ceballos's supervisors in the District Attorney's office and the County on the basis of qualified and sovereign immunity, respectively. The Ninth Circuit reversed and remanded, holding that neither the individual nor the county defendants were immune and that, under existing Ninth Circuit law as set forth in *Roth v. Veteran's Administration of the United States,* 856 F.2d 1401 (9th Cir. 1988), Ceballos' speech was protected, for summary judgment purposes, by the First Amendment. *Ceballos v. Garcetti*, 361 F.3d 1168, 1180 (9th Cir. 2004). The Supreme Court reversed and clarified prior case law that the only speech that is protected is speech offered in the speaker's citizen capacity, as opposed to in his or her capacity as an employee. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employee discipline." *Garcetti*, 547 U.S. at 421.

The Court, however, expressly reserved the question of whether its holding extends to scholarship or teaching-related speech. The majority opinion notes:

> There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching.

*Id.* at 425. Thus, *Garcetti* by its express terms does not address the context squarely presented here: the First Amendment's application to teaching-related speech. For that reason, defendants' heavy

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

5

reliance on *Garcetti* is misplaced. *See Lee v. York County Sch. Div.*, 484 F.3d 687, 695 n.11 (4th Cir. 2007) (recognizing that *Garcetti* explicitly did not decide whether its public employee speech analysis would apply in the same manner to speech related to teaching, thus applying existing circuit law).

Acknowledging that the Ninth Circuit has not determined the scope of the First Amendment's application to classroom teaching, plaintiff urges the court to follow the case law of other circuits, specifically the Sixth Circuit and the Second Circuit have recognized that the First Amendment protects a teacher's classroom speech. *Evans-Marshall v. Board of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223 (6th Cir. 2005) (applying *Pickering-Connick*[1] balancing test to determine whether teacher's classroom speech was protected, and affirming denial of motion to dismiss First Amendment retaliation claim); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036 (6th Cir. 2002) (recognizing that classroom speech touching on a matter of public concern is constitutionally protected); *Hardy v. Jefferson Comty. Coll. and KY Comty. and Technical Coll. Sys.*, 260 F.3d 671 (6th Cir. 2001) (college instructor's in-class speech relating to matters of public concern is constitutionally protected); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 598 (2d Cir. 1990) (finding college officials not entitled to qualified immunity because punishment of professor based on classroom discourse would violate the First Amendment).

In light of the *Garcetti* Court's reluctance to apply its public-employee speech rule in the context of academic instruction, the court must apply the existing legal framework for analyzing teacher's instructional speech. The Ninth Circuit has previously recognized that teachers have First Amendment rights regarding their classroom speech, albeit without defining the precise contours of those rights. *Cohen v. San Bernardino Valley College*, 92 F.3d 968, 972 (9th Cir. 1996); *see also Cal. Teachers Assn. v. State Bd. of Educ.*, 271 F.3d 1141, 1148 (9th Cir. 2001) (recognizing that neither the Ninth Circuit nor the Supreme Court had "definitively resolved whether and to what extent a teacher's instructional speech is protected by the First Amendment"). In *Cal. Teachers Assn.*, the Ninth Circuit assumed both that instructional speech deserves some First Amendment

---

[1] *Pickering v. Board of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983).

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

6

United States District Court
For the Northern District of California

protection and that regulation of such speech is subject to the test set forth by the Supreme Court in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), a case involving regulations on student speech. 271 F.3d at 1148-49. The court noted that several tests have been applied by the various circuits, but cited with approval case law applying *Hazelwood* in the context of a teacher's instructional speech. *Id.* at 1149 n.6. Under this standard, a teacher's instructional speech is protected by the First Amendment, and if the defendants acted in retaliation for her instructional speech, those rights will have been violated unless the defendants' conduct was reasonably related to legitimate pedagogical concerns. *Id.* at 1149, citing *Hazelwood*, 484 US. at 273.

As noted, the precise contours of the First Amendments' application in the context of a college professor's instructional speech are ill-defined and are not easily determined at the motion to dismiss stage. Too many facts remain to be discovered and developed before the parties and the court may dispositively address whether plaintiff's rights under the First Amendment were violated by the defendants' actions. The court cannot determine, at the pleadings stage, whether the defendants' actions were reasonably related to legitimate pedagogical concerns. To the extent that the defendants took action against plaintiff because of her instructional speech to her class, and assuming without deciding at this stage of the proceedings that the instructional speech was within the parameters of the approved curriculum and within academic norms – i.e., that the defendants actions were not reasonably related to legitimate pedagogical concerns – then the complaint has stated a claim for relief under 42 U.S.C. §1983. Therefore, the motion to dismiss the first claim is denied.

### B. First Amendment Viewpoint Discrimination

Defendants argue that Sheldon's First Amendment claim for viewpoint discrimination does not state a claim for the same reason as her retaliation claim. The court's analysis of the first claim essentially addresses the second claim also. Therefore, the motion to dismiss the second claim is denied.

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

7

### C. Fourteenth Amendment Equal Protection

Sheldon's equal protection claim is apparently based on the alleged individual mistreatment of her. *See* Complaint ¶¶ 147-51. Defendants argue that this is an equal protection claim in the public employment context based on a class of one, which is foreclosed by *Engquist v. Oregon Dept. of Agriculture*, 128 S. Ct. 2146 (2008). Plaintiff raises no written opposition to this argument, and the court finds that her claim is indeed barred by *Engquist*. The motion to dismiss the third claim for relief is granted.

### D. Fourteenth Amendment Due Process

Sheldon's fourth claim alleges that SJCC denied her due process of law in terminating her employment. Defendants move to dismiss, arguing that: (1) as an at-will employee Sheldon had no constitutionally cognizable property right in her employment; and (2) she was afforded due process before being terminated.

In order to have a constitutional property interest in a particular benefit, a person "must have more than an abstract need or desire for it. . . [a person] must have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). A constitutionally sufficient claim of entitlement, furthermore, must stem from "an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In California, public employment is held by statute, not contract. *Miller v. State of California*, 18 Cal.3d 808, 813 (Cal. 1977). Sheldon qualifies as a temporary employee under Cal. Educ. Code § 87482.5, and therefore could be terminated at SJCC's discretion under Cal. Educ. Code § 87665. Under California law, Sheldon therefore had no constitutional property interest in her employment, and no due process claim lies for her termination. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977); *Portman v. County of Santa Clara,* 995 F.2d 808, 905 (9th Cir. 1993).[2] Therefore, Sheldon's fourth claim for relief fails.

---

[2] Even though Sheldon could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire her, she may nonetheless establish a claim to reinstatement if the decision not to rehire her was made by reason of her exercise of constitutionally protected First Amendment freedoms. *Mt. Healthy*, 429 U.S. at 283-84.

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

## III. ORDER

For the reasons stated above, the court:

(1) denies defendants' motion to dismiss as to plaintiffs' first and second claims based upon the alleged violation of her First Amendment rights; and

(2) grants defendants' motion to dismiss as to plaintiffs' third claim based upon the alleged violation of her equal protection rights under the Fourteenth Amendment and her fourth claim asserting deprivation of due process under the Fourteenth Amendment. The dismissals are with prejudice as any attempt to amend would be futile.

DATED: 11/25/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Benjamin Wyman Bull | bbull@telladf.org |
| David Jonathan Hacker | dhacker@telladf.org |
| Kevin Trent Snider | kevinsnider@pacificjustice.org |
| Matthew Brown McReynolds | mattmcreynolds@pacificjustice.org |
| Nathan Wesley Kellum | nkellum@telladf.org |
| Travis Christopher Barham | tbarham@telladf.org |
| David French | dfrench@telladf.org |

**Counsel for Defendants:**

| | |
|---|---|
| Louis A. Leone | lleone@stubbsleone.com |
| Katherine A. Alberts | albertsk@stubbsleone.com |
| Kathleen Darmagnac | darmagnack@stubbsleone.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/25/09                                             TER
                                                        **Chambers of Judge Whyte**

ORDER ON DEFENDANTS' MOTION TO DISMISS
No. C-08-03438 RMW
TER

10